# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 27, 2012

No. 11-30770

Lyle W. Cayce
Clerk

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff - Appellee

v.

BOH BROTHERS CONSTRUCTION COMPANY, L.L.C.,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, DeMOSS, and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The Equal Employment Opportunity Commission ("EEOC") brought this Title VII case against Boh Brothers Construction Company ("Boh Brothers") on behalf of the alleged discriminatee, Kerry Woods, a male construction worker in an all-male crew, who claimed that Boh Brothers' crew superintendent, Charles "Chuck" Wolfe, engaged in "same-sex" harassment against him by referring to him in raw homophobic epithets and lewd gestures.

There is no claim or evidence that either Woods or Wolfe is homosexual or effeminate. There is plenty of evidence that Wolfe is a world-class trash talker and the master of vulgarity in an environment where these characteristics abound. And there is Wolfe's accusation that Woods was girlish because Woods

No. 11-30770

used "Wet Ones" when he went to the toilet. But that seems to be about all of the non-manly characteristics of which Woods was accused. There is no question, however, that Woods was the primary and constant victim of Wolfe's offensive abuse and harassment, much of it in the nature of sexual vulgarity. The jury was very sympathetic with Woods: It returned a substantial verdict of actual and punitive damages against Boh Brothers, and the district court granted injunctive relief. Boh Brothers now appeals.

We join the jury's reaction to Wolfe's language and abuse, but the evidence does not establish a claim of unlawful same-sex discrimination in violation of Title VII. It bears repeating that Title VII is not "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Nor is it the business of the federal courts generally to clean up the language and conduct of construction sites. The judgment of the district court is therefore VACATED and the case is REMANDED for entry of judgment dismissing the complaint.

## I.

Kerry Woods began working as an ironworker for Boh Brothers in November 2005. In January 2006, he was assigned to a maintenance crew for the Twin Spans bridge between New Orleans and Slidell, which had been repaired and returned to service after Hurricane Katrina.

By that April, Woods was being harassed regularly by crew superintendent Chuck Wolfe. Wolfe would call Woods names such as "faggot" and "princess" and would approach him from behind to simulate having sexual intercourse while Woods was bent over to perform job duties. Wolfe allegedly exposed himself to Woods numerous times. Woods complained more than once to the crew foreman that he "didn't like how [Wolfe] talked to me." There is, however, no evidence that either man was either homosexual or attracted to homosexuals.

No. 11-30770

The other aspect of this case is apart from the harassment, at least as far as the record evidence shows. An inspection contractor, Volkert Construction Services ("Volkert"), oversaw Boh Brothers' work on the bridge and approved its employees' time records. In November 2006, a Volkert inspector notified Wolfe that Woods had requested to view the time sheet on which the maintenance crew members' hours were recorded. (There was conflicting testimony about whether Woods sought to view his own time entry or others'. In any event, the inspector believed the latter and notified Wolfe because requesting to view other employees' time entries was a terminable offense.) Wolfe, in turn, notified his supervisor, Wayne Duckworth, adding that he "didn't care for" Woods because he was "different" and "didn't fit in." (This observation was not further explained by Wolfe, but the jury heard that Woods was not a member of the union, as were the other workmen, including Wolfe.) Duckworth instructed Wolfe to have Woods meet him at the Boh Brothers Almonaster yard, which was arranged.

During this meeting with Duckworth, Woods complained in detail about Wolfe's harassment. Duckworth sent Woods home for three days without pay (whether as punishment for his time sheet request or to allow Duckworth time to find him a new job assignment, the record is unclear), and when Woods reported to work thereafter he did so at the Almonaster yard. Duckworth subsequently investigated Woods's allegations and determined that Wolfe's behavior, though unprofessional, did not constitute sexual harassment.

Woods initially filed an EEOC charge questionnaire in November 2006, shortly after his removal from the Twin Spans maintenance crew, alleging he had been "fired" from that job and, three days later, hired to work at a different Boh Brothers location. In February 2007, Woods was laid off for lack of work. That March, he filed an EEOC charge of discrimination, alleging sexual

3

No. 11-30770

harassment and, on the basis of his November 2006 removal from the maintenance crew, retaliation.

In September 2009, the EEOC brought an enforcement action in district court on behalf of Woods, claiming sexual harassment and retaliation under Title VII. Following a three-day trial, the jury returned a verdict in favor of Woods on the harassment claim and in favor of Boh Brothers on the retaliation claim. The jury awarded Woods $200,000 in compensatory damages and $250,000 in punitive damages, the former of which the court reduced to $50,000 in compliance with the statutory damages cap. 42 U.S.C. § 1981a(b)(3)(D). Boh Brothers filed a renewed motion for judgment as a matter of law following entry of judgment, which the court denied. Boh Brothers timely appealed. Only the sexual harassment, or hostile work environment, claim is before us.

## II.

We review *de novo* a denial of a motion for judgment as a matter of law. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004). Such a motion should be granted if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party." Fed. R. Civ. P. 50(a)(1).

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment is a form of discriminatory treatment under Title VII. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63-67 (1979). We first must determine whether Wolfe's conduct constituted sex discrimination prohibited under Title VII. If we conclude that it did, we then must decide whether that conduct created a hostile work environment. *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002).

No. 11-30770

The EEOC's case depends on the proposition that sex stereotyping by a member of the same sex can constitute sexual harassment under Title VII. Its theory is that Wolfe harassed Woods because Woods did not, in Wolfe's view, conform to the male stereotype. Boh Brothers counters that same-sex stereotyping, even assuming it was present here, cannot constitute sexual harassment under Title VII because it is not one of the three evidentiary paths established to show same-sex harassment by *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998).

*Oncale* is the first Supreme Court case to address whether workplace harassment violates Title VII when the harasser and the harassed employee are of the same sex. The Court explained that the same inference drawn in most male-female harassment situations–that proposals of sexual activity would not have been made had the employee been of the same sex as the harasser–"would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual." *Id.* at 80. The Court further explained that "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Id.* A same-sex harassment plaintiff might also show that "the harasser is motivated by general hostility to the presence of [members of the same sex] in the workplace," or "offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id.* at 80-81.

Our court has not before been presented the question whether *Oncale*'s enumerating the above three forms of same-sex harassment excludes other possible forms, such as the alleged sex stereotyping, which is at issue in this appeal. Rather, our prior cases have involved only *Oncale*'s first form of same-sex harassment, proposals of sexual activity. *See Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182 (5th Cir. 2012); *Love v. Motiva Enters. LLC*, 349 F. App'x 900 (5th Cir. 2009) (unpublished); *Russell v. Univ. of Tex. of the Permian Basin*, 234 F.

App'x 195 (5th Cir. 2007) (unpublished); *Noto v. Regions Bank*, 84 F. App'x 399 (5th Cir. 2003) (unpublished); *La Day*, 302 F.3d 474 (5th Cir. 2002). And although other circuits uniformly have allowed evidence of sex stereotyping in considering discrimination claims under Title VII,[1] there is at least some resistance to allowing, in same-sex harassment suits, evidence that does not fall within any *Oncale* category. *Compare Wasek v. Arrow Energy Servs., Inc.*, --- F.3d ---, 2012 WL 2330824, at \*3-4 (6th Cir. June 20, 2012) (treating three *Oncale* forms of same-sex harassment as exclusive), *with Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 874 (9th Cir. 2001) (allowing same-sex harassment claim by man who was "discriminated against for acting too feminine").

The sex stereotyping theory of liability has its roots in the landmark Title VII case, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). Ann Hopkins alleged that she had been denied partnership in her accounting firm because some of the partners felt, in words attributed to them, that she was "macho," needed "a course at charm school," and should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Id.* at 235. In explaining how those words might evince discrimination because of sex, a plurality of the Court stated that "an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." *Id.* at 250.

The case before us today stands in sharp contrast to *Price Waterhouse*, in which there was considerable evidence that the plaintiff did not conform to the female stereotype. The only charge asserted by Wolfe that Woods was other

---

[1] To be clear, even in the straightforward discrimination (as opposed to sexual harassment) context, permissible and impermissible sex stereotyping are separated by degree. An employer is not prohibited from requiring some degree of conformity with what is generally expected in the context of the job. For example, an employer may require a certain conformity of dress, and it is difficult to conceive that an employer would act unlawfully by prohibiting men from wearing dresses, heels, lipstick, etc.

than masculine to which the EEOC has pointed us is his use of "Wet Ones" instead of toilet paper. Wolfe testified that he did not view Woods as feminine, and there is no evidence except the "Wet Ones" that he did, and that does not strike us as overtly feminine. The record further shows that, although Woods may have been Wolfe's primary target, he was by no means his only target. Nor was Wolfe the sole offender. To the contrary, misogynistic and homophobic epithets were bandied about routinely among crew members, and the recipients, Woods not excepted, reciprocated with like vulgarity.

Assuming that the EEOC has asserted a viable theory of Title VII discrimination in behalf of Woods, it is a circular truth that a plaintiff may not recover based on nonconformance to gender stereotypes unless the plaintiff conforms to nonconformance gender stereotypes. Accordingly, we hold that there is insufficient evidence that Wolfe "acted on the basis of gender" in his treatment of Woods. *Price Waterhouse*, 490 U.S. at 250. Because there is insufficient evidence in this case to support the asserted sex stereotyping theory of same-sex harassment asserted by the EEOC, we need not decide whether such a theory is cognizable in this circuit. *See Oncale*, 523 U.S. at 81 ("Whatever evidentiary route the plaintiff chooses to follow, he or she must *always* prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]* . . . because of sex.' " (first emphasis added)). And because we conclude that Wolfe's conduct did not constitute discrimination in violation of Title VII, we do not reach the question whether it was sufficiently severe or pervasive to create a hostile work environment. *See La Day*, 302 F.3d at 478.

## III.

Title VII protects employees against workplace discrimination, not against all forms of mistreatment. The EEOC alleges that Woods was unlawfully harassed because he was not stereotypically masculine. Because the only

No. 11-30770

evidence of non-stereotypically masculine behavior in the record is Woods's use of "Wet Ones," we conclude that the evidence is insufficient to support the jury's verdict that Woods was discriminated against "because of . . . sex," 42 U.S.C. § 2000e-2(a)(1), and its verdict in favor of Woods is reversed.

There is the question raised in this appeal whether sex stereotyping is a cognizable form of same-sex harassment under Title VII. As the facts allow for resolution on narrower grounds, we leave that question for another day. The evidence was insufficient to support the jury's verdict of sexual harassment, and the district court erred by denying Boh Brothers' renewed motion for judgment as a matter of law.

Accordingly, we VACATE the judgment, including the award of injunctive relief, and REMAND for entry of judgment dismissing the complaint.

VACATED and REMANDED for entry of judgment of dismissal.