# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20575

United States Court of Appeals
Fifth Circuit

**FILED**

February 12, 2015

Lyle W. Cayce
Clerk

PRIMUS E. JACKSON, JR.,

Plaintiff - Appellant

v.

HONEYWELL INTERNATIONAL, INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-4404

Before HIGGINBOTHAM, JONES, and PRADO, Circuit Judges.

EDITH H. JONES, Circuit Judge:*

Appellant Primus Jackson ("Jackson") appeals the district court's denial of his Rule 59(e) Motion for Reconsideration after its grant of summary judgment in favor of Honeywell International, Inc. ("Honeywell"). Jackson filed suit against Honeywell following the termination of his employment, alleging various discrimination and retaliation claims under state and federal law. We AFFIRM the district court's grant of summary judgment for

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-20575

Honeywell on all of Jackson's claims, pretermitting the issue whether the district court abused its discretion by denying the Motion for Reconsideration.

## I.    BACKGROUND

Jackson was a long-time employee of Honeywell, hired in 1968 and promoted to Principal Engineer in 1992. Between 2001 and 2009, Tin Ngo ("Ngo") was Jackson's technical manager.

Beginning in 2005, and again in 2006 and 2009, Ngo noted in performance reviews that Jackson's performance fell below expectations. In 2006, Ngo provided Jackson with guidance for improvement. Following Jackson's 2009 performance review, Jackson complained to Human Resources that Ngo was treating him unfairly. Jackson contended that the evaluation of his work was not accurate, Ngo did not recognize his achievements, and his pay was adversely affected by his low performance evaluations. Jackson was required to acknowledge a Letter of Expectation ("LOE") based upon his unsatisfactory performance review in 2009.

Subsequently, Ngo placed Jackson on a Performance Improvement Plan ("PIP"). The PIP gave Jackson 60 days to demonstrate immediate and continuous improvements in his performance. The PIP expressly stated that if Jackson did not meet stated expectations or show improvement, he would be subject to further discipline, up to and including termination. Months later, Ngo determined that Jackson had not successfully completed his PIP. In 2010, as the project Jackson worked on was coming to an end, he was assigned to work on two other projects. He was also assigned to a new technical manager, Victor Nguyen ("Nguyen"). The PIP continued, but when Jackson failed to complete it after more than three months, Nguyen decided, in consultation with his manager Karen Blumentritt ("Blumentritt"), to terminate Jackson's employment. The termination was effective on July 8, 2010.

No. 13-20575

Jackson filed suit against Honeywell, alleging: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), 42 U.S.C. § 1981 ("Section 1981") and Texas Labor Code § 21 *et seq*. ("Texas Labor Code"); (2) retaliation in violation of Title VII, Section 1981 and the Texas Labor Code; (3) a hostile work environment based on race in violation of Title VII, Section 1981, and the Texas Labor Code; (4) hostile work environment based on age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq*., and the Texas Labor Code; and (5) age discrimination in violation of the ADEA and the Texas Labor Code.

On January 15, 2013, Honeywell moved for summary judgment. Jackson's response was due on February 4, 2013. However, Jackson did not file a response. According to exhibits later filed by Jackson, Jackson's counsel, Shalanda Moore ("Moore"), was hospitalized on January 23, 2013. On February 7, 2013, Moore was released from the hospital and began in-patient rehabilitation, where she continued to lack her computer and files. On March 15, 2013, Moore was discharged from the rehabilitation facility and has since been on medical leave and recovering at a relative's home. On April 17, 2013, the district court granted Honeywell's motion for summary judgment and entered final judgment in favor of Honeywell. On April 29, 2013, Jackson filed a Rule 59(e) Motion for Reconsideration based on Moore's hospitalization. The district court denied this motion. Jackson timely appealed.

## II.   MOTION FOR SUMMARY JUDGMENT

After careful review of the complete record, including the supplemental materials proffered in Jackson's Motion for Reconsideration, we find no

genuine issue of material fact concerning his claims under Title VII, the ADEA, 42 U.S.C. 1981, or their counterparts in Texas law.[1]

*A. Standard of Review*

We review a district court's grant of summary judgment *de novo*, applying the same standard on appeal as that applied below. *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). "[T]his court construes 'all facts and inferences in the light most favorable to the nonmoving party.' " *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)). But "[s]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Id.* "We are not limited to the district court's reasons for its grant of summary judgment and may affirm the district court's summary judgment on any ground raised below and supported by the record." *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 606–07 (5th Cir. 2014) (internal quotation marks omitted).

---

[1] As the district court aptly noted, discrimination claims brought under Section 1981 and the Texas Labor Code are evaluated under the same analytical framework as Title VII claims. *Black v. Pan Am Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011); *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010). Thus, our discussion of Jackson's Title VII and ADEA claims, which follows, applies equally to his Section 1981 claims and his Texas Labor Code claims.

No. 13-20575

*B. Race Discrimination Claims*

Jackson claims that Honeywell discriminated against him because of his race in violation of Title VII, Section 1981 and the Texas Labor Code. Specifically, Jackson contends: (1) Ngo asked Jackson to perform software coding because of his race, (2) Ngo failed to give Jackson recognition or accolades for his achievements because of his race, (3) Jackson was assigned to work on two tasks over a four month period because of his race, (4) Nguyen required Jackson to perform a public presentation of the LDRA tool because of his race, (5) Honeywell paid Jackson less than other employees because of his race, and (6) Jackson was rejected for the position of Orion Test Program Manager ("OTPM") because of his race.

Because Jackson has not offered any direct evidence, we apply the modified *McDonnell Douglas* burden-shifting standard, as the district court did. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). Jackson must first demonstrate a *prima facie* case of discrimination; he must show that he: (1) is a member of a protected class, (2) was qualified for the position at issue, (3) was discharged or suffered some adverse employment action by the employer, and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). If Jackson can make out a *prima facie* case, the "burden then shifts to the employer to articulate a legitimate, nondiscriminatory . . . reason for its employment action." *Id.* This burden is one of production, not persuasion and does not involve a credibility assessment. *Id.* Once the employer states its reason, the burden shifts back to the plaintiff; the plaintiff must show either that the employer's reason is false and merely pretext for discrimination or that while the employer's reason is

5

true, it is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. *Burrell*, 482 F.3d at 411-12.

As to the first four claims of race discrimination, we must determine whether Jackson has created a genuine, material fact issue that he suffered an adverse employment action. Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating. *See McCoy*, 492 F.3d at 559-60. An employment action that has a "mere tangential effect on a possible ultimate employment decision" does not rise to the level of an adverse employment action. *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).

Beginning first with Jackson's claim that Ngo asked him to perform software coding because of his race, Jackson argues that requiring him to write code without a license had an adverse effect on his employment because he was under a PIP, which ultimately led to his termination. As to his second claim, that Ngo discriminatorily failed to give Jackson recognition or accolades for his achievements, Jackson argues that this was a denial of compensation and thus an adverse employment action. Next, as to Jackson's claim that he was assigned to work on two tasks over a four month period because of his race, he argues this was materially adverse to his complying with the terms of his PIP and ultimately led to his termination. Finally, as to his claim that Nguyen required Jackson to perform a public presentation of the LDRA tool because of his race, Jackson claims that his failure to successfully conduct the LDRA presentation was materially adverse to his complying with the terms of his PIP and led to his termination. Contrary to Jackson's claims, however, less favorable work assignments and denial of performance awards do not constitute adverse employment actions. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). As a matter of law, whether considered individually

or together, none of these complaints were actionable adverse employment actions.

We next turn to Jackson's claim that he was paid less than other employees because of his race. In order to establish a *prima facie* case, Jackson must show that his circumstances were "nearly identical" to those of a better-paid employee. *Taylor v. UPS, Inc.*, 554 F.3d 510, 523 (5th Cir. 2008). Jackson has failed to show that the two white employees he alleges were better-paid and more favorably treated are similarly situated. Honeywell produced evidence that Jackson's pay was determined by a variety of factors including his hire date, initial salary, experience and performance. The record shows that these two white employees were hired by Honeywell at different times, held different positions, and worked under different supervisors; there is no evidence that Jackson and these white employees had similar job duties, disciplinary histories, or levels of experience. Consequently, Jackson failed to establish a *prima facie* case of racially motivated disparate pay.

Finally, we turn to Jackson's claim that he was not selected for the OTPM position because of his race. Jackson established a *prima facie* case because Honeywell's refusal to hire Jackson for a position is an "ultimate employment decision," shifting the burden to Honeywell. Honeywell offered proof, however, that the position was rescinded for budgetary reasons. We have held that an elimination of a position is a legitimate, non-discriminatory reason for an adverse employment action. *Hanchey v. Enega Co.*, 925 F.2d 96, 98 (5th Cir. 1995). This shifts the burden back to Jackson to "present[] a genuine issue of fact as to whether the reasons articulated by [Honeywell] . . . were pretextual." *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 813 (5th Cir. 1991). Jackson may prove Honeywell's articulated reasons are pretext "in two ways, 'either [1] directly by persuading the court that a discriminatory reason more likely motivated the employer or [2] indirectly by

showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (internal quotations and citations omitted). "In the context of a summary judgment proceeding, the question is not whether the plaintiff *proves* pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." *Id.* (internal quotations and citations omitted).

Jackson argues in his Motion for Reconsideration that even though the OTPM position was purportedly rescinded because of budgetary reasons, Honeywell placed another employee, Jack Stanley ("Stanley"), in the position to assume the same job duties and responsibilities, albeit with a different job title of "Test Manager/Lead." Jackson argues that because Honeywell assigned these responsibilities to another person, Honeywell's proffered reason is false. Jackson's argument addresses Honeywell's decision not to give him these additional responsibilities, but it does not address the ultimate issue—that Honeywell did not create the OTPM position at all, possibly due to budget reasons, but instead increased the responsibilities of an employee other than Jackson. Jackson does not argue that Stanley received a pay increase or promotion along with these additional duties, which would serve to create a genuine issue of material fact as to whether the OTPM position was eliminated due to budgetary reasons, as Honeywell argues, or to avoid promoting Jackson, as Jackson argues. Jackson has not created a genuine, material fact issue that Honeywell's proffered reason is pretextual.

For these reasons, summary judgment for Honeywell is proper on Jackson's race discrimination claims.

*C. Retaliation Claim*

Jackson asserts that Honeywell retaliated against him after he complained in 2009 that his supervisor, Ngo, treated him unfairly in violation of Title VII, Section 1981, and the Texas Labor Code. Jackson's retaliation

No. 13-20575

claim is based not only on his termination, but also on Honeywell's decision to place him on an LOE and two PIPs.

As we have stated, where there is no evidence of direct discrimination, we analyze Title VII claims under the *McDonnell Douglas* standard. *LeMaire v. Louisiana*, 480 F.3d 383, 388 (5th Cir. 2007). Because Jackson has offered no evidence of direct discrimination, he must establish a *prima facie* case. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). Jackson must show: (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal link between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 655 (5th Cir. 2012).

Jackson's argument that being placed on an LOE and two PIPs amounted to retaliation fails because written warnings and unfavorable performance reviews are not adverse employment actions where colorable grounds exist for disciplinary action or where the employee continues to engage in protected activity. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006).[2] The record demonstrates colorable grounds for the LOE and PIP; Honeywell began documenting Jackson's performance deficiencies in 2005 and continued to note points of poor performance in 2006 and 2008, before Jackson complained of discriminatory treatment from his supervisor. Accordingly, Jackson's performance reviews and other disciplinary measures did not constitute retaliation.

Jackson's claim of retaliation based on termination also fails because he cannot establish a causal nexus between the termination and the protected

---

[2] We made similar findings in *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007), and *Love v. Motiva Enters. LLC*, 349 F. App'x 900, 904-05 (5th Cir. 2009). *DeHart* and *Love* were unpublished decisions and are therefore not binding, but are persuasive.

activity—a necessary element of the *prima facie* case. Jackson has not offered evidence that his supervisor at the time he was terminated, Nguyen, knew of Jackson's prior complaints about Ngo, which were his protected activity, the previous year. *See Hernandez*, 641 F.3d at 130 (noting the causal nexus inquiry focuses on the actions of "the final decisionmaker"); *Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 883 & n.6 (5th Cir. 2003) (a plaintiff must first "demonstrate that the employer knew about the employee's protected activity"). Finally, even if Jackson could produce evidence that ultimate decisionmakers knew about his protected activity, his claim suffers because of the time gap between his protected activity and his termination. As we held in *McCoy*, "[c]lose timing between an employee's protected activity and an adverse action against the employee may provide the causal connection need to make out a *prima facie* case of retaliation." *McCoy*, 492 F.3d at 562 n.28. We have found a five month period between the protected activity and the adverse employment action insufficient to establish a causal link. *See Raags v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002). Here, there was a period of fifteen months between Jackson's protected activity and his termination, and seven months between his EEOC filing and his termination. Accordingly, Jackson has not established a causal nexus between his termination and protected activity.

For these reasons, we conclude that Jackson has not established a prima facie case of retaliation.

### D. Hostile Work Environment Claim – on the Basis of Race

Jackson claims he was subjected to a hostile work environment on the basis of his race. Specifically, he alleges his supervisor, Ngo, commented that Honeywell would not hire an engineer from Prairie View A&M because it was a "black school" and did not produce engineers with the skills Honeywell needed. He also claims that Ngo said dealing with African-Americans is

"difficult" because they "rip you off" and that he used a racial slur twice. Jackson alleges another Honeywell employee, Michael Berning ("Berning"), told him "no one cares about your diversity crap" during a discussion about a "Diversity Day" event at Honeywell.

In order to establish his hostile work environment claim, Jackson must prove that his environment at Honeywell was permeated with discriminatory intimidation, ridicule, and insult so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22, 114 S. Ct. 367, 370-71 (1993); *EEOC v. Boh Bros. Cost. Co., L.L.C.*, 731 F.3d 444, 453 (5th Cir. 2013) (en banc).

> Where a harassment claim arises out of a supervisor's conduct, there are four elements of a hostile working environment claim: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome [] harassment; (3) that the harassment was based on [a protected characteristics]; and (4) that the harassment complained of affected a term, condition, or privilege of employment. . . . We use an objective "reasonable person" standard to evaluate severity and pervasiveness. Ultimately, whether an environment is hostile or abusive depends on the totality of the circumstances.

*Boh Bros.*, 731 F.3d at 453. Workplace conduct is not measured in isolation; instead, we look to: (1) the frequency of the discriminatory conduct; (2) the severity; (3) whether it is physically threatening or humiliating as opposed to mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether the workplace undermines the plaintiff's workplace competence. *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325-26 (5th Cir. 2004).

Here, the comments, while they may be offensive, are not severe or pervasive enough to have created a hostile work environment. Jackson alleged

Ngo made offensive comments twice over a period of two years, and the alleged comment from Berning came a year later. The record also indicates that these did not unreasonably interfere with Jackson's work performance or his competence. When asked if from his perspective he was always fully capable of performing his duties Jackson answered, "Yes, I loved my work." Although Jackson cites that he received medical treatment for stress and mental anguish, the evidence does not support this contention. When asked about his mental anguish, Jackson testified he had "a lot of loss of sleeping . . . blood pressure off the charts . . . it was torture." However, Jackson also testified that he had been on blood pressure medication since 2001—years before any of the alleged comments were uttered. Jackson has not created a genuine, material fact issue concerning a racially hostile work environment.

*E. Hostile Work Environment Claim – on the Basis of Age*

Jackson claims he was subjected to a hostile work environment based on his age, pointing to several comments that were allegedly made between 2007 and 2009. He contends Berning commented three to four times that Jackson "should retire" so that Honeywell would not have to lay off younger employees. Jackson also contends that during a discussion regarding the unlikelihood of successfully completing his PIP, Blumentritt and Kellie Watts ("Watts") suggested Jackson should voluntarily retire and accept a severance package.

A plaintiff advances a claim for hostile work environment based on age discrimination by establishing that: (1) he was over the age of 40; (2) he was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011). As we have stated, Jackson must show the workplace is permeated with discriminatory intimidation, ridicule and insult

which is so severe or pervasive that it alters the conditions of employment and creates a hostile or abusive working environment. *Id.* Under the totality of the circumstances, we look to: (1) the frequency of the discriminatory conduct, (2) the severity, (3) whether it is physically threatening or humiliating as opposed to mere offensive utterance, (4) and whether it unreasonably interferes with an employee's work performance. *Id.*

"[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283 (1998). The comments alleged by Jackson are not severe or pervasive enough to have created a hostile working environment; instead, they were isolated and did not affect the terms and conditions of his employment. As to comments allegedly made by Berning, Honeywell aptly notes that while the alleged comment may have been offensive, Berning was not Jackson's manager and was not involved in any employment decisions involving Jackson.

Further, Jackson has not met his burden of establishing that his work environment was either objectively or subjectively hostile. *See Reed. v. Neopost USA, Inc.*, 701 F.3d 434, 443 (5th Cir. 2012) (holding that incidental or occasional age-based comments, including references to an employee like "old man" and "old fart" were insufficient to support an age-based hostile work environment claim). Jackson cites the same portion of the record as before to show the stress and mental anguish he experienced because of these alleged comments about his age, but for the reasons discussed above, we do not find his argument persuasive. In sum, the claim of a hostile environment based on Jackson's age lacks genuine, material fact issues.

We agree with the district court that Jackson has not shown a hostile work environment because of age that is actionable under law.

No. 13-20575

*F. Age Discrimination Claim*

Jackson alleges he was discriminated against based on his age when he was assigned to work under a younger employee, who he contends is less experienced than him but who, according to Nguyen, "was going to be around for the 20-year duration of the project." Because Jackson has offered no direct evidence of age discrimination, we again apply the *McDonnell Douglas* burden-shifting analysis. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 (5th Cir. 2003). Jackson must first establish a *prima facie* case by showing: (1) he is a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment decision, and (4) he was replaced by someone younger or treated less favorably than similarly situated younger employees. *Smith v. City of Jackson*, 351 F.3d 183, 196 (5th Cir. 2003).

Honeywell argues that Jackson failed to establish a *prima facie* case of age discrimination because neither Jackson's assignment to work under a younger employee nor Nguyen's alleged failure to select Jackson to the lead position constitute adverse employment actions because the lead role is a project assignment rather than a position or a promotional opportunity. In *Felton v. Polles*, we remarked that "the complained-of conduct must rise to the level of an 'ultimate employment decision'" and "Title VII was designed to address ultimate employment decisions . . . [which] include acts such as hiring, granting leave, discharging, promoting, and compensating." 315 F.3d 470, 486 (5th Cir. 2002) (internal quotations and citations omitted), *abrogated on other grounds by Burlington*, 548 U.S. at 53, 126 S. Ct. at 2405. Jackson has not shown that he was denied a promotion because of his age, but only that he was not given a lead role on a particular project. Accordingly, Jackson has not established a prima facie case of age discrimination.

14

No. 13-20575

## III.  CONCLUSION

Jackson has not raised genuine issues of material fact necessary to survive summary judgment on any of his discrimination and retaliation claims. After reviewing the full record including Jackson's submissions with his Rule 59(a) motion, we conclude that summary judgment was properly granted. The judgment of the district court is **AFFIRMED**.